UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-295-GWU

MATTHEW R. ABRAMS,                                           PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed

1

08-295  Matthew R. Abrams

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-295  Matthew R. Abrams

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-295  Matthew R. Abrams

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-295  Matthew R. Abrams

## DISCUSSION

The plaintiff, Matthew R. Abrams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of cerebral palsy, a "learning disorder (reads at second grade level)" and borderline intellectual functioning.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Abrams retained the residual functional capacity to perform his past relevant work as an automobile detailer, and therefore was not entitled to benefits.  (Tr. 21-2).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 28-year-old man with 11 years of schooling in special education and a work history as a cook, service station attendant, and automobile detailer, could perform any jobs if he were limited to "medium" level exertion, with non-exertional restrictions of being capable of no more than simple, routine tasks in an object-focused work environment, where reading was not an essential job element, with no more than occasional superficial interaction with coworkers and supervisors and no contact with the general public.  (Tr. 397-8).  He was also able to adapt to work changes. The VE responded that such a person could perform the plaintiff's past relevant work as an automobile detailer as it is performed in the national economy.  (Tr. 398).  In the alternative, the VE identified other jobs that such a person could

08-295  Matthew R. Abrams

perform and proceeded to give the numbers in which they existed in the state and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Abrams alleged disability beginning January 10, 2005 due to cerebral palsy, a learning disability, a back injury, bad knees, left shoulder pain, and poor left eyesight.  (Tr. 58).  He alleged having several physical problems, including a left shoulder injury that dated from the age of 16 or 17, knee pain that caused his legs to go out, and asthma.  (Tr. 387-95).  Office notes from his family physician, Dr. Kurt Avery, do show a number of visits for upper respiratory infections and bronchitis, and there is at least one reference to "asthmatic bronchitis," but it does not appear that he was regularly prescribed asthmatic medications.  (E.g., Tr. 256).  There is no indication of any shoulder problems.  Mr. Abrams was treated for a contusion on the fifth digit of his left hand in January, 2004 after he became angry and punched a car window.  (Tr. 250-1).  Regarding knee problems, there is one reference to muscle cramps, possibly exacerbated by a history of cerebral palsy, but there is no other indication of leg problems.  (Tr. 252).  A consultative examiner, Dr. Sushil M. Sethi, examined Mr. Abrams on October 18, 2005, and found few abnormalities. Vision was diminished in his left eye to 20/200, without glasses, but otherwise Dr. Sethi found only diffuse tenderness in the lumbosacral spine and very slightly reduced ranges of motion in the shoulder, lumbar spine, and ankles.  (Tr. 269-71).

X-rays of the left shoulder and both knees were normal, while the lumbosacral spine had only very minimal osteoarthritis at L5-S1.  (Tr. 267).  Dr. Sethi found no evidence for any restriction on work-related physical activities.  (Id.).

The plaintiff's only argument regarding his physical impairments focuses on a 1989 occupational therapy evaluation, completed when the plaintiff was 11 years old and in elementary school.  (Tr. 237).  While the evaluator found evidence of deficits in some areas, such as standing balanced with the eyes closed and eye tracking, he was also able to "jump, hop, skip, creep forwards and backwards, and roll easily," had excellent balance with his eyes open, was able to perform almost all fine motor skills, and had good bilateral motor coordination.  (Tr. 237-8).  The report does not suggest the presence of major deficits even at the age of 11, much less at the time of the plaintiff's alleged onset date, over 15 years later.  The plaintiff failed to prove any physical restrictions as an adult.

The plaintiff's primary assertion on appeal is that the ALJ improperly failed to find that he was illiterate and disabled by his learning disability.  School records do indicate borderline intellectual functioning, as found by the ALJ, with a full scale IQ of 73 in February, 1993 at the age of 14.  (Tr. 182).  In the ninth grade, his reading, mathematics, and writing skills were all below the third grade level.  (Tr. 154).  As an adult, there is a note from Laurel County Adult Education and Literacy that Mr. Abrams was reading at a second grade level in 2006.  (Tr. 195).  The plaintiff himself testified that he had received his driver's license through an oral

08-295  Matthew R. Abrams

examination and would not be able to read a grocery list unless he was shown what the items were.  (Tr. 379-80).

Mr. Abrams was evaluated by a psychologist, Dr. Mark D. Hammerly, in November, 2005.  He gave a history of attending school to the eleventh grade in special education and a work history of one year as a cashier at a gas station and four years detailing cars. (Tr. 275).  He stated that he had no problem getting along with people on the job, but did have problems with the speed of his work, work quality, and understanding.  (Id.).  He stated that, for example, it took more than a month for him to learn how to work a lottery machine.  (Id.).[1]  He had stopped the job detailing cars because it was hard for him to hold a buffer.  (Tr. 273).  Dr. Hammerly found that Mr. Abrams was alert and oriented, knew his age, birthday, and Social Security number, and was able to repeat four digits forward and backward; he was able to do one calculation but not another.  (Tr. 276).  His daily activities included mowing, working on his car, and performing household duties including washing dishes, laundry, cooking, housecleaning, and grocery shopping.  (Tr. 277-8).  He would also help out a friend at times by stocking shelves in exchange for being given tobacco.  (Tr. 277).  His mother would pay the bills and keep track of money.  Dr. Hammerly felt that the plaintiff's social planning and

---

[1]Mr. Abrams testified at the administrative hearing that he had been fired from the cashier job after a year because of a back injury; he stated he had a doctor's excuse to be off work, but his boss thought he was faking the injury and fired him.  (Tr. 396).

08-295  Matthew R. Abrams

judgment concerning real world situations and concepts was somewhat deficient, but still borderline.  (Id.).  He did not diagnose borderline IQ or a learning disability because no IQ testing had been ordered and opined that the claim should not be denied before such testing was completed.  (Tr. 278).  From a functional standpoint, he felt that there would be only mild limitations with a Global Assessment of Functioning (GAF) of 65, and repeated that there would be no more than mild impairment in his ability to relate to others, understand, remember, and follow instructions, maintain attention and concentration, persistence, and pace, and withstand the stress and pressures associated with day-to-day work activity.  (Tr. 279-80).

A state agency psychologist, Dr. Jan Jacobson, reviewed the evidence, including school records indicating borderline intellectual functioning and a learning disorder, but noted that Mr. Abrams's activities of daily living and Dr. Hammerly's examination did not indicate marked mental restrictions.  (Tr. 313).  She felt that he would be moderately limited in his ability to understand, remember, and carry out detailed instructions and respond appropriately to changes in the work setting, but was able to understand and remember simple instructions, sustain attention for simple tasks for extended periods of two-hour segments, tolerate coworkers and supervisors, and adapt to changes as needed in an object-oriented work setting. (Tr. 311-13).

08-295  Matthew R. Abrams

Taken as a whole, the ALJ's mental restrictions are consistent with the opinion of Dr. Jacobson, the state agency reviewer.  As the plaintiff points out, Dr. Jacobson did find "moderate" limitations in the areas of understanding, remembering, and carrying out detailed instructions and in responding appropriately to changes in the work setting.  However, the hypothetical question limited the plaintiff to no more than simple, routine tasks, meaning that there would be no detailed instructions involved.  Dr. Jacobson also specified that the plaintiff would be able to adapt to changes in an "object-oriented work setting," which is consistent with the ALJ's restriction to an "object-focused work environment."  In any case, Dr. Hammerly found no more than mild limitations in any area and because he was an examiner the ALJ could reasonably have found that Dr. Hammerly was entitled to greater weight than Dr. Jacobson.

Dr. Hammerly did request IQ testing before adjudicating the plaintiff's case, but it is noteworthy that none of the several IQ tests given to Mr. Abrams in school indicated scores of 70 or below (Tr. 183, 221, 230), a requirement to meet the Commissioner's Listing of Impairment 12.05C.  As noted in the Applicable Law section of this opinion, it is the plaintiff's responsibility to prove his own case, and the Commissioner's failure to order an IQ test is not grounds for a remand.  This is especially true when the state agency reviewers had the extensive school records available for review.

12

08-295  Matthew R. Abrams

Finally, the plaintiff argues that the ALJ improperly failed to find that he was illiterate, citing the objective testing indicating that he read below the third grade level and noting that such scores show functional illiteracy. <u>Skinner v. Secretary of Health and Human Services</u> 902 F.2d 447, 450-1 (6th Cir. 1990).  This argument must fail for two reasons.  First, the plaintiff was found capable of returning to his past relevant work, meaning that the burden had not yet shifted to the defendant to show that there were jobs existing in the economy which he could perform despite functional illiteracy in combination with his other restrictions.  Second, the ALJ's hypothetical question specified that reading could not be an essential element of the plaintiff's job.  There would appear to be very little meaningful distinction between the ALJ's formulation and a finding that Mr. Abrams is functionally illiterate.

The decision will be affirmed.

This the 30th day of June, 2009.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**